such instructions as might seem to a board of canvassers to be fit, they might refuse to count any of the ballots cast for governor of the state, and thus defeat the will of the voters. It is quite clear to my mind that any order of the court which recognizes such a right should be based upon some express provision of the statute, and no such power should be put into the hands of the canvassers of the votes of a town unless the statute requires it. For this reason, while I think the Eggleston Case is undoubtedly the law so far as it says that these questions were not properly submitted to the electors, and therefore that the town has failed to determine whether any certificates should be granted or not, yet I do not think that it is within the power of the court by mandamus to require the town board to meet, and reject these ballots. For these reasons I think that the Eggleston Case should not be followed in this respect, and for that reason alone the order should be reversed.

(63 App. Div. 545.)

McCONNELL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. INJURY TO EMPLOYE—NEGLIGENCE—EVIDENCE—SUFFICIENCY.
    Plaintiff's decedent was an employé of a manufacturing corporation near defendant's tracks, the latter having certain sidings exclusively for the benefit of such corporation. Decedent's employer had its own engines, and crews to operate them. Decedent was a brakeman in one of such crews, and was killed by a piece of coal falling on his head from the tender of an engine of one of defendant's trains. Two co-employés of decedent, who saw the train pass, testified that the coal was piled a few inches above the edge of the tender. The next morning one was recalled, and he stated that in the center of the tender the coal was rounded up to a height of three feet above the edges. Such witness had been interviewed during the night by plaintiff's counsel. *Held*, that the evidence was insufficient to sustain a finding that the coal fell by reason of its being negligently piled on the tender.

2. SAME—BURDEN OF PROOF.
    The burden was on the plaintiff to prove negligence.

Appeal from trial term, Onondaga county.

Action by Mary McConnell, administratrix, against the New York Central & Hudson River Railroad Company, for the death of plaintiff's decedent. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Frank Hiscock, for appellant.
Frank C. Sargent, for respondent.

WILLIAMS, J. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event. The action was to recover damages resulting from the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The Solvay Process Company operated extensive works about two miles west of the city of Syra-

cuse, on the line of the Auburn branch of the defendant's road. Passing the works on the south, the defendant had its main or passenger track, and north of this, and adjacent to the Solvay Works, it had three sidings, used exclusively for the benefit of those works. The Solvay Process Company had its own engines, and crews of men to operate them, and had more or less sidings north of defendant's tracks and within its own premises, which it used in connection with its business. The deceased was one of the Solvay Process Works employés,—a brakeman working in one of the engine crews. On the night of the accident the deceased was to commence work at 6 o'clock. His body was found between the main or passenger track and first siding to the north of it a little before 6 o'clock, and just after the passenger train, leaving the Syracuse station at 5 o'clock and 35 minutes, passed by the Solvay Process Works. It was claimed by the plaintiff that his death resulted from his being hit upon the head by a large piece of coal falling from the tender of the engine drawing such passenger train. No one saw the accident, and the manner in which the death was caused was a matter of inference from circumstances alleged to have been proven at the trial. The place where the accident occurred was upon the defendant's land, and by the side of its passenger track. The public generally had no business there. The employés of the Solvay Process Company had a right to be there while engaged in performing their duties for that company. Whether the deceased was so engaged at the time he was killed was a question in controversy upon the trial, and which was submitted to the jury. The evidence, to say the least, was very meager to support plaintiff's claim that the deceased was properly there and performing his master's duty. The jury found for the plaintiff upon the issue, however. It was necessary they should so find, in order to render a verdict for the plaintiff, as the court charged them. It was also essential that the plaintiff should show the manner in which the death was caused, in order to obtain a verdict in her favor. The death must be traced to the negligence of the defendant, and this could be done in this case only by proof that a large piece of coal fell from the tender of the engine of the passenger train and struck him upon the head. Here, again, the evidence was very meager. It was, however, submitted to the jury, under the instruction by the court that this fact must be found, in order to enable the plaintiff to recover, and the jury found it accordingly. The negligence was not yet established, however. The jury must go further, and find that this piece of coal fell from the tender of the engine by reason of the coal having been piled upon the tender improperly, carelessly, and negligently, in that it was piled up too high above the edge thereof. It is interesting at this point to note the particular language of the charge:

"The mere fact that the accident happened, if you find it happened as the plaintiff claims— The mere fact, if you so find, that a piece of coal fell from this passenger train and killed McConnell, is not in itself evidence of any negligence whatever on the part of the railroad company. You must specifically find, apart from and excluding that consideration, that the railroad company was negligent in some way, and that that negligence caused

the death of McConnell. The sole claim of negligence made by the plaintiff is that the coal upon this engine was improperly piled, and that because of such improper piling this particular piece in question fell from the tender and struck McConnell, killing him. The question I submit to you. The evidence upon that is brief. Two of the witnesses (the motorman and the conductor) state that they saw the tender, that it was piled with coal of irregular sizes, and that it was rounded up from the edges, and raised in the center about six inches above the edge of the tender. If that you find to be the fact, there can hardly be any claim that the tender was improperly loaded, or that the defendant was negligent in any way in that regard. The witness Mitchell states, however, that he also saw the tender as it passed on the night in question, and that in the center the coal was rounded up as the other witnesses have described, but rounded up to a height of about three feet above the edges. As I say, if you find that the evidence given by the motorman and the conductor is true, you cannot make any finding of negligence in this case, based upon the way in which that tender was loaded; and, as that is the only claim of negligence, you cannot make any finding in favor of the plaintiff. If you find, however, that the tender was piled as Mitchell has described to you, I leave it for you to say whether, as a matter of fact, in so loading its tender the defendant failed to exercise that degree of reasonable care and caution which the ordinary man would have used under similar circumstances. That is the only question of negligence which I submit to you in this case. Did the defendant show a want of proper care and caution in the manner in which this tender was loaded? And, if it did, did death result because of that lack of care and caution? In other words, did death result because this particular lump of coal which is said to have struck McConnell was improperly placed upon this tender, and thereby became loosened, and rolled from the tender and struck him? You must find that the tender was improperly loaded, and that that improper loading caused the lump in question to roll to the ground and strike McConnell."

This was a very clear statement of the question of negligence submitted to the jury, and under this charge the jury found for the plaintiff. The two witnesses who testified to the coal being piled up but a few inches above the edge of the tender were not employés of the defendant. They were disinterested witnesses, and were called and examined by the plaintiff on this subject. The next morning the witness Mitchell, who had been examined the day before, was put back upon the stand, and gave the evidence upon which the jury based their verdict. The plaintiff had entirely failed to prove by her two witnesses, Felt and McArdle, employés of the street-railroad company, any negligence to base a recovery upon. Mitchell was a co-employé of the deceased with the Solvay Process Company. He was interviewed during the night by the plaintiff's counsel, and was called back to the stand in the morning, and gave the evidence which alone carried the case past the court and to the jury. While the evidence, however unsatisfactory, may have been sufficient to carry the case to the jury, under the case of McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282, recently decided by the court of appeals, notwithstanding the former decisions of that court (Linkauf v. Lombard, 137 N. Y. 417, 33 N. E. 472, 20 L. R. A. 48, 33 Am. St. Rep. 743; Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342; Laidlaw v. Sage, 158 N. Y. 73, 96, 52 N. E. 679), we think the evidence was not sufficient to uphold the verdict upon the motion for a new trial. The verdict was clearly against the weight of evidence. The burden of proof was upon the plaintiff. Such burden was not met or sustained. The charge was unobjectionable, but the

jury seemed willing to arrive at any conclusion suggested by the court as necessary to support a verdict for the plaintiff. The evidence upon all the questions of fact submitted to the jury was very slight to rest a finding upon in favor of the plaintiff, but the evidence upon the question of the negligent loading of coal upon the tender, and such negligence causing the injury and death of the deceased, was too slight and unsatisfactory to authorize the finding made by the jury. The defendant had a legal right to use coal that was in some part, at least, in large pieces. It had a right to so load the coal as that it should extend above the edge of the tender to some extent. How this particular piece of coal happened to fall from the tender,—whether from the manner in which it was loaded, or while being transferred from the tender to the fire box, or while other coal was being so transferred,—or how it happened, was a mere matter of conjecture. There were no facts shown from which an inference could fairly be drawn one way or another. There was no proof that the coal was loaded upon this tender in any other than the ordinary way in which such loading was accustomed to be done,—that there was anything extraordinary or negligent in such loading. We do not think it was fairly shown that the piling up was at such a height as to be negligent. Coal is liable to fall from tenders when trains are running at a high rate of speed, and the mere fact that it did fall on this occasion, as stated by the trial justice to the jury, was no evidence that there was negligence in loading the tender on this particular occasion.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.